# HAYES *v.* PRATT.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

No. 19. Argued March 25, 1892.—Decided March 6, 1893.

A citizen of Pennsylvania, born in New Jersey, devised and bequeathed the residue of his estate, real and personal, consisting mostly of property in Pennsylvania and in Michigan, with some real estate in New Jersey, to his executors, in trust to sell and invest at their discretion, " and to appropriate and use the principal or income thereof for the purpose of founding and supporting, or uniting in the support of any institution that may be then founded, to furnish a retreat and home for disabled or aged and infirm and deserving American mechanics; " and appointed as his executors H, a citizen of New Jersey, and W, a citizen of Pennsylvania, " and in the event of the death of either or both of them, first, P, and next, N, to supply vacancy." W took out letters testamentary in Pennsylvania, and there administered the property in Pennsylvania and in Michigan, and, with the approval of a Pennsylvania court, appropriated it to found a home for such mechanics, incorporated by the legislature of Pennsylvania to carry out the testator's charitable intention. H took out letters testamentary in New Jersey, and took care of the real estate there, and died having done nothing beyond obtaining the opinion of counsel that the executors would be authorized, in their discretion, to provide a bed for such mechanics in a hospital, incorporated in New Jersey, for " the care, nurture and maintenance of sick, infirm, aged and indigent persons, and of orphan and destitute children," and whose by-laws provided that patients in a condition to be discharged, or whose disease was incurable, should not remain in the hospital, and that those able to pay for their maintenance should do so. After the deaths of H and W, a son of H took out letters of administration with the will annexed of the unadministered goods, chattels and effects of the original testator in New Jersey; and, after having assured P that he would not dispose of the real estate in New Jersey without giving him an opportunity to show that the Pennsylvania corporation was entitled to it, sold it, and, without any order of court, and without P's knowledge or consent, paid the proceeds to the New Jersey corporation, taking a bond of indemnity. *Held*, that P, on taking out letters testamentary in Pennsylvania, was entitled, as executor, and upon filing a copy of those letters, to maintain a bill in equity against the New Jersey administrator in the Circuit Court of the United States for the District of New Jersey to recover those proceeds, with interest, and costs.

THIS was a bill in equity, filed August 11, 1884, in the Court of Chancery of the State of New Jersey, by Dundas T. Pratt, a citizen of Pennsylvania, describing himself as "succeeding executor of the last will and testament of George Hayes, late of the city and county of Philadelphia, in the State of Pennsylvania, deceased," and by the Hayes Mechanics' Home, a corporation organized under the laws of Pennsylvania, and established at Philadelphia, against Henry Hayes, a citizen of New Jersey, administrator of George Hayes, for an account of property of the deceased received by him, amounting to more than $5000, and for payment thereof to either of the plaintiffs, as the court might direct.

The case was duly removed, upon the defendant's petition, into the Circuit Court of the United States for the District of New Jersey, and was there, after an answer and a general replication had been filed, heard upon pleadings and proofs, by which it appeared to be as follows:

George Hayes was a jeweller, was born in Newark in the State of New Jersey in 1815, and there lived until 1847, when he removed to Philadelphia, and became interested in and identified with the mechanics of that city, and resided and did business there until June 1, 1857, when he died, leaving a dwelling house and personal estate in Philadelphia, real estate in Michigan, and an interest in real estate in Newark, (on which he had lived and carried on his business before his removal to Philadelphia,) and a will, dated June 16, 1855, duly executed and published according to the laws of Pennsylvania and of New Jersey, by which, after payment of debts and legacies, he provided as follows:

"Item. As to the rest, residue and remainder of my estate, both real and personal, and of every nature and kind whatsoever, I give, devise and bequeath the same to my executors hereinafter named, their heirs, executors and administrators forever, in trust to realize the same in the manner deemed by them the most advisable, and keep the same invested in such manner as they in their discretion may deem most advantageous, and to appropriate and use the income or principal thereof for the purpose of founding and supporting, or uniting

in the support of any institution that may be then founded, to furnish a retreat and home for disabled or aged and infirm and deserving American mechanics.

" Item. To better enable my said executors to carry out and perfect my intentions as expressed in the last foregoing item, I authorize and empower them to sell all or any of my real estate, either at public or private sale, either for cash or part cash, and reserving ground rent or taking mortgage for the purchase money, as the case may be, without any liability of the purchaser or purchasers thereof as to the application or misapplication of the purchase or consideration moneys.

" Lastly. I nominate, constitute and appoint my brother, Jabez W. Hayes, and my friend, Dr. Lewis E. Wells, (and in the event of the death of either or both of them, then I appoint, first, Dundas Pratt, and next, my brother in law, Horace H. Nichols, to supply vacancy,) to be the executors of this my will."

Dundas Pratt, named in the will, was Dundas T. Pratt, one of the original plaintiffs and present appellees. It does not appear that Nichols ever did anything in regard to this trust.

Lewis E. Wells resided in Philadelphia, and proved the will and was appointed and qualified as executor thereof in the orphans' court of Philadelphia on June 20, 1857, and, with the knowledge of Jabez W. Hayes, took care of the property in Pennsylvania and in Michigan.

Jabez W. Hayes resided in Newark, and proved the will and was appointed and qualified as executor thereof in the orphans' court of Essex county in New Jersey on August 4, 1857, and, with the knowledge of Wells, took care of the property in New Jersey.

On June 21, 1858, Wells and Pratt, together with Ferdinand J. Dreer, the former partner of the testator, and other citizens of Pennsylvania, were duly incorporated, under the general laws of Pennsylvania, as the Hayes Mechanics' Home, with the object of " the founding and providing of a retreat and home for disabled, aged or infirm and deserving American mechanics." Dreer was president and Pratt secretary of the

corporation from the beginning, and Wells was treasurer of the corporation from its organization until 1873, when he was removed and another treasurer chosen, and Pratt afterwards became treasurer.

On March 16, 1861, the législature of Pennsylvania, at the instance of Wells as acting executor, passed an act, reciting that the Hayes Mechanics' Home had been incorporated as aforesaid " for the purpose of founding a home for disabled, aged or infirm and deserving American mechanics, and with the intention of carrying into effect the charitable objects provided for by the last will and testament of George Hayes, deceased, late of the city of Philadelphia;" ratifying and confirming its charter; and empowering it to take and hold the property devised and bequeathed by George Hayes as aforesaid. Penn. Laws of 1861, c. 117, p. 132.

Wells paid all the testator's debts and legacies, and, in 1864, settled in the orphans' court of Philadelphia the account of his administration of the property in Pennsylvania, and paid to the Hayes Mechanics' Home the balance of the personal estate in his hands, amounting to $13,789; and also, in obedience to an order of that court, (upon the petition of the corporation, stating that settlement and payment, the provision of the will, the charter of the corporation, and the act of the legislature,) conveyed to that corporation the land in Pennsylvania, valued by an examiner of that court at $12,000, and the land in Michigan, valued at $17,000. The property so received and the proceeds of sales thereof were afterwards invested so that, besides paying $10,000 in 1859 for a tract of sixteen acres of land as a site for a building, they amounted in May, 1884, (including $11,500 received from other persons,) to $92,000. The building was actually begun a few months after the filing of this bill.

Wells died in 1876, never having done anything about the real estate in New Jersey, although he knew of its existence.

There was in the city of Newark an institution called the Hospital of St. Barnabas, incorporated by an act of the legislature of New Jersey of February 13, 1867, c. 32, which provided that the object of the corporation should be " the care,

nurture and maintenance of sick, infirm, aged and indigent persons, and of orphan, half orphan and destitute children, the providing for their temporal and spiritual welfare, and the procuring or erecting a suitable building or buildings;" and that its members and trustees should be members of the Protestant Episcopal Church, and the moral and religious instruction of the inmates should be in conformity with the doctrine, discipline and worship of that church. New Jersey Acts of 1867, p. 51. Its by-laws and rules provided that patients in a condition to be discharged, or whose disease was incurable, should not remain in the hospital; and that all per- sons able to pay for their maintenance should do so.

Jabez W. Hayes often told his sons that he intended to devote the principal and income of the testator's property in Newark to the support of this hospital, and in 1870, and again in 1876, obtained the opinion of counsel that, under the provisions of the will of George Hayes, the executors would be authorized in their discretion to provide a permanent bed in this hospital for disabled or aged and infirm and deserving American mechanics. But he took no other steps in that direction, and died in January, 1882, without having rendered any account of his administration.

On December 12, 1882, the orphans' court of the county of Essex and State of New Jersey passed an order, reciting the probate of the will of George Hayes in that court, and that " Jabez W. Hayes, after having taken upon himself the execu- tion of said will in this State, has departed this life, that due notice has been given of this application to Dundas Pratt, the only other surviving executor named in said will, and to all other parties in interest;" and appointing "Henry Hayes administrator of all and singular the goods, chattels and credits of the said George Hayes, deceased, in the State of New Jersey, left unadministered by Jabez W. Hayes, deceased, who is duly authorized to administer the same agreeably to said will."

Before this appointment, and after Pratt had received notice of the application therefor, a correspondence took place between him and Henry Hayes, in which Pratt, while acqui-

escing in the appointment, insisted that the testator's interest in the land in New Jersey (the existence of which had become known to him only since the death of Jabez W. Hayes,) should go to the Hayes Mechanics' Home; and Henry Hayes expressed a wish that it should be applied, as his father had hoped, to a bed for mechanics in the hospital at Newark. On June 25, 1883, Henry Hayes, in answer to a letter from Pratt about the sale of this interest of the testator, wrote to him that he would not, of course, make any disposition of the money but a legal one, and that he would not dispose of it in any way without giving Pratt an opportunity to show that the Hayes Mechanics' Home was the only institution entitled to it.

Henry Hayes soon afterwards sold this property, and received money from the sale and from previous income thereof; and in October, 1884, made an offer to the Hospital of St. Barnabas, which that corporation accepted, to appropriate to its use the greater part of this money; and on January 8, 1884, settled his account in said orphans' court, showing a balance in his hands of $5153.27; and declined to pay it to Pratt, as executor of George Hayes, or as treasurer of the Hayes Mechanics' Home; and in March, 1884, without any order of court, and without Pratt's knowledge or consent, paid this balance to the Hospital of St. Barnabas, informing it of Pratt's claim, and taking from it a bond of indemnity, secured by a mortgage on real estate; and the board of trustees of that corporation, on March 17, 1884, "resolved, that the Hospital of St. Barnabas consents to receive said fund, and it hereby agrees to use such fund solely for the purpose of furnishing a retreat and home for disabled or aged and infirm and deserving American mechanics, in accordance with the will of the late George Hayes;" and, on July 1, 1885, having meanwhile completed a new hospital building, "resolved, that a suitable part of the building be fitted up with two beds to be devoted especially to the purposes mentioned by the testator, and that a tablet be placed upon the walls as an indication of these uses and a memorial of the donor of the fund."

On May 10, 1884, in the orphans' court of Philadelphia, (as appeared by an exemplified copy of the record of the appointment, filed with the bill in this case,) "Jabez W. Hayes and Lewis E. Wells, two of the executors named in said will, being dead, letters testamentary were duly granted unto Dundas T. Pratt, surviving executor;" and Pratt was duly qualified "as the succeeding executor of the foregoing last will and testament of George Hayes, deceased." At that time, there was no estate of the testator, which had not been duly administered, except so far as the property in New Jersey could be so considered; and Pratt testified that his only object in being appointed was to sue for and recover that property, that he supposed that the Hayes Mechanics' Home could itself pursue that fund, but was advised that he, as executor, should claim it.

The Circuit Court "ordered, adjudged and decreed that the respondent, Henry Hayes, administrator of the estate of George Hayes, in the State of New Jersey, pay to the complainant, Dundas T. Pratt, treasurer of the Hayes Mechanics' Home, a corporation of the State of Pennsylvania, and for and in behalf of said corporation, the sum of $5153.27, with interest from January 10, 1884, being the balance in his hands, as administrator aforesaid, on settlement of his account in the orphans' court of Essex county, New Jersey," with costs.

*Mr. A. Q. Keasbey* for appellant.

I. The Hayes Mechanics' Home had no legal or equitable claim upon the defendant in this suit. He had assumed no trust relation with that corporation. Therefore that home had no standing in New Jersey to demand by suit anything from the defendant, as administrator of the estate of George Hayes in New Jersey, and the decree enforcing such demand directly in its favor should be reversed.

II. Dundas T. Pratt, in his capacity of succeeding executor in Pennsylvania, had no right to make any such claim.

The granting of letters testamentary to him twenty years after the estate had been settled and all the functions of the executor ended in Pennsylvania, was a work of super-

erogation. There was nothing in Pennsylvania for him to administer ʻand could not be, for by the records of the orphans' court, it appears that the whole of the Pennsylvania property was administered and applied according to the will of the Pennsylvania executor in the discharge of his trust. In like manner all the New Jersey property had before his appointment been applied by the New Jersey executor in discharge of the same trust, so far as it was imposed upon him. The Pennsylvania executor took no title to the New Jersey real estate and acquired no right as to the disposition of it.

III. But even if the Pennsylvania executor was authorized to obtain the New Jersey fund by transmission from this jurisdiction, or to dispose of it at his own discretion, he had no power to bring suit in the New Jersey jurisdiction against the representatives of the estate there, but his only remedy was to apply to the orphans' court in New Jersey for such direction as to such transmission as that court at its discretion under the circumstances of the case might see fit to make. *Stacey* v. *Thrasher*, 6 How. 44; *Noonan* v. *Bradley*, 9 Wall. 394; *Johnson* v. *Powers*, 139 U. S. 156.

This foreign executor cannot demand as a right by a suit in the Court of Chancery, that the New Jersey executor shall account to him for the proceeds of the property in New Jersey devised to him by the will, or for the manner in which he has in his discretion disposed of that property.

IV. But even if the Pennsylvania executor had a right to sue the New Jersey administrator, or if he had applied to the probate court of New Jersey for an order directing its administrator to transmit the residue in his hands to Pennsylvania for administration there, he could not have recovered in a suit, nor would the orphans' court have been bound to make any order for such transmission. There is no obligation to make such transmission. It is only a matter of comity, and depends wholly upon the circumstances of the case, and in this case there are no circumstances which call for the exercise of such comity.

There is nothing left for the new executor, appointed in Pennsylvania, to do with respect to the subject matter of

George Hayes' estate. The executor appointed in Pennsylvania is *functus officio,* and all his duties were closed twenty years ago. No considerations of comity and no principles of equity require that the acts done in New Jersey by the executor appointed there in the exercise of his discretion should be undone at the instance of a new executor in Pennsylvania, in order that he may have the privilege of exercising the discretion over again and applying the fund to a different purpose. *Dent's Appeal,* 22 Penn. St. 514; *Mothland* v. *Wireman,* 3 Penn. 185; *S. C.* 23 Am. Dec. 71; *In re Hughes,* 95 N. Y. 55; *Hunter* v. *Bryson,* 5 G. & J. 483; *S. C.* 25 Am. Dec. 313; *Carmichael* v. *Ray,* 5 Iredell, (Eq.) 365; *Harvey* v. *Richards,* 1 Mason, 381; *Mackey* v. *Coxe,* 18 How. 100; *McLean* v. *Meek,* 18 How. 16; *Stacey* v. *Thrasher,* 6 How. 44; *Tourton* v. *Flower,* 3 P. Wms. 369; *Borden* v. *Borden,* 5 Mass. 67; *S. C.* 4 Am. Dec. 32; *Pond* v. *Makepeace,* 2 Met. 114; *Chapman* v. *Fish,* 6 Hill, 554; *Vaughn* v. *Northrup,* 15 Pet. 1; *Banta* v. *Moore,* 15 N. J. Eq. (2 McCarter,) 97; *Normand* v. *Grognard,* 17 N. J. Eq. (2 Green,) 425; *Mahnken's Case,* 36 N. J. Eq. (9 Stewart,) 518.

It follows that the Hayes Mechanics' Home, which has no interest in the estate itself, except that part of it which the Philadelphia executor has already chosen to give it, has no standing whatever in the Court of Chancery of New Jersey to recover another part of the estate which has already been bestowed upon another charitable corporation, nor has the Pennsylvania executor such an interest in the property in this State as to enable him to maintain such an action.

V. The property in dispute in this case is the proceeds of the sale of real estate. The disposition of real estate is governed by the law of the place where it is situated. This law would govern the descent of land undisposed of by will, and by this law the question of the due execution of a will would be decided.

It is the general rule that the disposition of real estate is governed by the law of the place where it is situated; and when a testator appoints an executor in that place, and gives him power to sell real estate, the presumption is that he in-

tends him to have power over his real estate there, and that he may sell it according to the laws of the place where it is, and may also dispose of the proceeds as well as of the land itself, under the directions of the will.

Even with respect to personal property there is a tendency to limit the rule that it is governed by the law of the domicil. The distribution of personal property in cases of intestacy is according to the law of the domicil, but yet so far as it concerns creditors it depends on the law of the country where it is situated. *Milne* v. *Moreton,* 6 Binney, 353; *S. C.* 6 Am. Dec. 466; *Farmers'& Mechanics' Bank* v. *Loftus,* 133 Penn. St. 97.

VI. It is the general result of the cases that the disposition of the residue of an estate in the hands of an ancillary executor or administrator is wholly a matter of discretion, and that there is no rule or principle which requires that the funds which were in the hands of this administrator with the will annexed, should have been sent into a foreign jurisdiction as against any proper claims here, whether of creditors, legatees named in the will, or objects of the testator's bounty and charity, selected by his executor here in pursuance of the power of the will; and all the cases show that the foreign executor or administrator has no right to meddle with the estate here or sue for it, unless such power is given, on proper application to the courts of this jurisdiction.

In this case such discretion ought not to be exercised in favor of sending the proceeds of real estate in New Jersey out of the State for the purpose of applying it to purposes not contemplated by the New Jersey executor who held the title to the property.

*Mr. John R. Emery* for appellees.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

George Hayes, by his will, devised and bequeathed the residue of his estate, real and personal, to his executors, in trust to sell and invest at their discretion, "and to appropriate and use the principal or income thereof, for the purpose of

founding and supporting, or uniting in the support of any institution that may be then founded, to furnish a retreat and home for disabled or aged and infirm and deserving American mechanics."

The primary, if not the only, intention of the testator evidently was that his bounty should go to a single institution, "a retreat and home for disabled or aged and infirm and deserving American mechanics," either by founding, as well as supporting, a new institution, or by aiding in the support of one founded by others. The validity of the charitable trust is undoubted, notwithstanding that the trustees might appropriate the fund to an institution established after the testator's death. *Jones* v. *Habersham,* 107 U. S. 174, 191; *Curran's Appeal,* 4 Pennypacker, 331; *Taylor* v. *Bryn Mawr College,* 7 Stewart, (34 N. J. Eq.) 101.

The execution of this trust was committed by the testator to the executors named in the will, first, to Jabez W. Hayes and Lewis E. Wells, and next, in the event of the death of either or both of these, to Dundas Pratt and Horace H. Nichols, successively. So long as any one of the four is living, and has not declined the office of executor, or been shown to be unsuitable, no other person can execute the trust. And it is doubtful, to say the least, whether the trust is not such a personal confidence reposed by the testator in the persons named, that it would in no event pass to an administrator with the will annexed, but must, if all those named in the will should die before full performance of the trust, be executed by a trustee specially appointed for the purpose. *Ingle* v. *Jones,* 9 Wall. 486, 497, 498.

Of the two executors first named, Jabez W. Hayes being a citizen of New Jersey, and Lewis E. Wells a citizen of Pennsylvania, each proved the will and took out letters testamentary in his own State, and assumed the care and management of the property in that State, and Wells also took control of the property in Michigan. But such an arrangement, however convenient, cannot affect the duty of either or both of the executors, or of the court, to see that the trust is carried out according to the testator's intention.

The testator was born and for many years lived in New Jersey, but his domicil at the time of his death and for ten years before was in Pennsylvania. A small part only of his property was in New Jersey, and the greater part was in Pennsylvania and Michigan. The Hayes Mechanics' Home was incorporated within thirteen months after his death by his partner, by Wells, his Pennsylvania executor, by Pratt, now his executor, and by other citizens of Pennsylvania, under the laws of that State, for the purpose of founding and supporting "a retreat and home for disabled, aged or infirm and deserving American mechanics," as contemplated in his will. Wells settled his account as executor in the proper court of Pennsylvania, and paid over the balance of personal property in his hands to the Hayes Mechanics' Home, and also, by order of that court, conveyed to that corporation the lands in Pennsylvania and in Michigan; and the validity of the payment and conveyance has not been impugned. In short, the whole of the residue of the testator's property, real and personal, except the comparatively small amount now in controversy, has been appropriated, with the approval of the legislature and of the courts of his domicil, in a manner to carry out his charitable intent in accordance with the letter and spirit of his will.

Jabez W. Hayes, the executor appointed in New Jersey, died in January, 1882, having done nothing towards carrying out the charitable intent of the testator, beyond obtaining the advice of counsel that the executors (not that he alone) might lawfully appropriate the property in New Jersey to the support of the Hospital of St. Barnabas in Newark.

After his death, Henry Hayes was appointed by the orphans' court in New Jersey to be administrator of the unadministered "goods, chattels and credits" of George Hayes in New Jersey. As already indicated, it is difficult to see how this appointment could give him any title in or power over the real estate devised to the executors in trust. But if it can be treated as vesting in him the title to the real estate in New Jersey, it certainly did not authorize him to undertake the performance of the charitable trust created by the will, so

long as Pratt, one of the alternative executors and trustees therein named, was still alive, had never declined the trust, and had not even known, until recently, of the existence of any estate of the testator not already disposed of according to his will.

Moreover, to apply the fund, received by the defendant from the sale of the real estate in New Jersey, to the maintenance of a free bed in the Hospital of St. Barnabas under the charter and rules of that institution, would be much less in accord with the intention of the testator, as expressed in his will, than to add this fund to his other property already devoted to the foundation and support of the Hayes Mechanics' Home.

Both the original executors being dead, and Pratt, the successor next named in the will, having been appointed sole executor in their stead, he is the only person authorized to execute the charitable trust of the testator, so far as anything remains to be done with regard to it.

It was objected that Pratt, as executor appointed in Pennsylvania, could not sue in New Jersey without taking out letters testamentary in that State. But this objection is answered by the statute of New Jersey of 1879, c. 16, which enacts that " any executor or administrator, by virtue of letters obtained in another State, may prosecute any action in any court of this State, without first taking out letters in this State : provided such executor or administrator shall, upon commencing suit, file in the office of the clerk of the court in which such suit shall be brought an exemplified copy of the record of his or their appointment," which has been done in this case. New Jersey Acts of 1879, p. 28; *Lawrence* v. *Nelson*, 143 U. S. 215.

It was further objected that since the orphans' court had been vested by the statute of New Jersey of 1872, c. 340, with the power, upon allowing the accounts of executors, or of administrators with the will annexed, to order distribution of the residue in accordance with the will, application should have been made to that court. New Jersey Acts of 1872, p. 47. But the statutes of the State conferring jurisdiction upon

the orphans' court do not even affect the jurisdiction of the
Court of Chancery of New Jersey over the settlement of es-
tates. *Frey* v. *Demarest*, 1 C. E. Green, (16 N. J. Eq.) 236;
*Coddington* v. *Bispham*, 9 Stewart, (36 N. J. Eq.) 224, 574;
*Houston* v. *Levy*, 17 Stew. (44 N. J. Eq.) 6. Certainly, no
such statutes can defeat or impair the general equity jurisdic-
tion of the Circuit Court of the United States to administer,
as between citizens of different States, the assets of a deceased
person within its jurisdiction. *Green* v. *Creighton*, 23 How.
90; *Payne* v. *Hook*, 7 Wall. 425; *Lawrence* v. *Nelson*, 143
U. S. 215.

The defendant, as administrator with the will annexed of
George Hayes, having received money from the income and
sale of his real estate, and settled his account therefor in
the court which appointed him, and having, without any
order of court, and without right, and with notice of Pratt's
claim, paid the money to the Hospital of St. Barnabas, taking
from that corporation a bond of indemnity, was rightly held
liable to account for it, with interest from the date when
he so settled his account after having determined so to
pay it.

There being no one in New Jersey having any right to or
claim upon this fund, and no special reason being shown for
administering it in New Jersey, it should, upon familiar
principles, be transmitted to the executor appointed at the
testator's domicil for distribution. *Wilkins* v. *Ellett*, 9
Wall. 740, 742; *Harvey* v. *Richards*, 1 Mason, 381, 412,
413; *Normand* v. *Grognard*, 2 C. E. Green (17 N. J. Eq.)
425, 428.

Pratt, being the executor appointed in the State of the tes-
tator's domicil, and the trustee charged with the adminis-
tration of the charitable trust, is the only person entitled to
maintain this suit. The joinder of the Hayes Mechanics'
Home as a plaintiff was unnecessary, and perhaps improper;
but not having been objected to, by demurrer or otherwise, in
the court below, it affords no ground for refusing relief. The
decree of the Circuit Court is irregular in that it directs
payment to be made to Pratt as treasurer of the Hayes

Mechanics' Home, instead of to him as executor, and is therefore to be amended in that particular, and,

*So amended, affirmed.*

MR. JUSTICE SHIRAS, not having been a member of the court when this case was argued, took no part in its decision.